TRINA A. HIGGINS, United States Attorney (#7349)
TODD C. BOUTON, Assistant United States Attorney (#17800)
SACHIKO JEPSON, Assistant United States Attorney (#17077)
Attorneys for the United States of America
111 South Main Street, Suite 1800 | Salt Lake City, Utah 84111
Telephone: (801) 524-5682
todd.bouton@usdoj.gov; sachiko.jepson@usdoj.gov

---

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

---

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 1:23-cr-00023-TC |
| Plaintiff, | : | UNITED STATES' OPPOSITION TO DEFENDANT SCIOTTO'S MOTION TO DISMISS INDICTMENT |
| v. | : | |
| NICHOLAS FRANK SCIOTTO AND KYLE BLAKE BURBAGE, | : | Judge Tena Campbell |
| | : | Chief Magistrate Judge Dustin B. Pead |
| Defendants. | | |

---

*Challenging an indictment is not a means of testing the strength or weakness of the government's case, or the sufficiency of the government's evidence . . . . Rather, "[a]n indictment should be tested solely on the basis of the allegations made on its face, and such allegations are to be taken as true."* United States v. Todd, 446 F.3d 1062, 1067 (10th Cir. 2006) (internal citations omitted).

1. **INTRODUCTION**

Sciotto was caught red handed manufacturing and selling over 120,000 counterfeit COVID-19 vaccination record cards to the public during the COVID-19 pandemic. He and his co-

1

conspirators did so to obstruct the Centers for Disease Control and Prevention (CDC)'s lawful government function of responding to the COVID-19 pandemic. This response to the COVID-19 pandemic included administering COVID-19 vaccines and distributing accompanying COVID-19 vaccination record cards through authorized vaccine distributors in a way that helped ensure the cards would accurately and reliably reflect the card recipients' vaccination status.

The Indictment alleges that Sciotto and his co-conspirators (1) entered into an agreement, (2) to obstruct a lawful function of a federal Government agency, (3) by deceitful or dishonest means, (4) committed at least one overt act in furtherance of the conspiracy, and (5) acted with interdependence. Therefore, as a matter of law, Sciotto's and his co-conspirators' conduct, as alleged in the Indictment, amounts to the crime of Conspiracy to Defraud the United States by obstructing the lawful government functions of the CDC in violation of 18 U.S.C. § 371.[1]

Despite the Indictment's clarity, Sciotto now asks the Court to dismiss the Indictment because, he claims, what he did was purportedly not a crime, and because the Indictment purportedly fails to state a viable criminal offense against him. Sciotto is wrong.

The Indictment alleges every element of the charged offense. Therefore, the Court should deny Sciotto's motion to dismiss the Indictment and allow this case to proceed to trial.

/ / /

/ / /

---

[1] *See United States v. Coplan*, 703 F.3d 46, 60–61 (2d Cir. 2012) (stating elements of Conspiracy to Defraud the United States by obstructing a lawful function of the United States or one of its agencies, such as the CDC); Tenth Circuit Pattern Crim. Jury Instructions No. 2.19; *United States v. Cooper*, 654 F.3d 1104, 1115 (10th Cir. 2011).

2

**2.      STATEMENT OF FACTS**

**2.1      On March 29, 2023, Sciotto was indicted for Conspiracy to Defraud the United States and, in particular, its agency, the CDC, in violation of 18 U.S.C. § 371.**

On March 29, 2023, a grand jury returned an indictment against Nicholas Frank Sciotto and Kyle Blake Burbage. (ECF 1 [Indictment]). The Indictment includes a single charge of Conspiracy to Defraud the United States in violation of 18 U.S.C. § 371. (*Id.* at ¶¶ 1-2, 16-20). More particularly, the Indictment alleges a Conspiracy to Defraud the United States by obstructing the lawful government functions of the CDC. (*Id.* ¶ 17). As its name implies, the Centers for Disease Control and Prevention's mission includes controlling and preventing disease.[2]

**2.2      The Indictment alleges that Sciotto and his co-conspirators entered into an agreement to impede, impair, obstruct, and defeat lawful government functions of the CDC that did not depend on a vaccination mandate.**

The Indictment alleges that Sciotto and his co-conspirators conspired to defraud the United States of America and the CDC for the purpose of impeding, impairing, obstructing, and defeating the lawful government functions of the CDC. (ECF 1 [Indictment] ¶¶ 1, 17).[3] The Indictment further alleges more specifically that *the lawful government functions at issue* included responding to the COVID-19 pandemic by (1) "distributing and administering authorized COVID-19 vaccines

---

[2] "The Centers for Disease Control and Prevention (CDC) serves as the national focus *for developing and applying disease prevention and control*, environmental health, and health promotion and health education activities designed to improve the health of the people of the United States. . . . *CDC is responsible for controlling the introduction and spread of infectious diseases* . . . ." such as COVID-19. https://www.cdc.gov/about/pdf/orginization/iod-mission-statement.pdf (emphasis added) (last visited November 15, 2023).

[3] As a courtesy, the United States has provided a marked copy of the Indictment as Attachment 1.

and COVID-19 vaccination record cards [exclusively] through approved vaccine distributing entities" and (2) doing so in a manner that would allow the vaccination record cards to be used *to reliably identify persons who had received bona fide COVID-19 vaccine doses* to facilitate compliance with federal, state, and local government health-and-safety protocols and requirements." (*Id.* ¶¶ 1, 7-15, 17) (emphasis added).

In even more detail, the Indictment alleges that the United States and the CDC sought to control the distribution of COVID-19 vaccines and vaccination record cards by making them exclusively available through the CDC's authorized vaccine distributing entities. (ECF 1 ¶¶ 8-11). To this end, the Indictment alleges the CDC imposed rules and protocols for vaccine distributing entities to ensure that they did not issue any COVID-19 vaccination record cards to any persons who did not actually receive the COVID-19 vaccines listed on the *CDC-issued* vaccination record cards. (*Id.* ¶¶ 11-12, 13a.-h., 14). The Indictment alleges that the CDC even required vaccine distributing entities to sign a CDC COVID-19 Vaccination Program Provider Agreement. (*Id.* ¶ 13). This agreement required vaccine distributing entities to abide by the CDC's rules and protocols for administering the vaccines and distributing the vaccination record cards before the distributors could even receive the vaccines and vaccination record cards and to properly report their administrations of COVID-19 vaccines. (*Id.* ¶ 13, 13a.-13.h.).

Further, the Indictment alleges that, in doing so, the CDC acted not only to make COVID-19 vaccines available to authorized persons in order to stem the COVID-19 pandemic, but also to ensure that the vaccination record cards could be reliably used to identify vaccinated persons. (*Id.* ¶¶ 4-7, 11, 15). In other words, the CDC intended, among other things, to provide for the controlled

4

distribution of authentic COVID-19 vaccination record cards to preclude persons from falsely claiming they had received COVID-19 vaccinations to evade health-and-safety protocols and to undermine the CDC's efforts to control and reduce the spread of COVID-19.

Contrary to Sciotto's implication, nowhere does the Indictment say that the lawful government functions at issue involved, or were exclusive to, imposing a federal vaccination mandate. (Compare ECF 1 [Indictment] with Def.'s Mot. to Dismiss Indictment at 3-4, 10-11).

### 2.3   The Indictment alleges that Sciotto and his co-conspirators used deceit, craft, trickery, and dishonest means to accomplish their purpose.

The Indictment alleges that Sciotto and his co-conspirators conspired "to defraud the United States by deceit, craft, trickery, and dishonest means . . . ." (ECF 1 [Indictment] ¶ 17).

Although not required, the Indictment further specifically alleges that Sciotto engaged in "deceit, craft, trickery, and dishonest means" by:

- Manufacturing *counterfeit* COVID-19 vaccination record cards in bulk for sale to others (*Id.* ¶¶ 1-2, 19a.);[4]

- Printing out approximately 120,000 *counterfeit* COVID-19 vaccination record cards that looked identical to bona fide COVID-19 vaccination record cards which were issued by the CDC at the time (*Id.* ¶¶ 1-2, 19.b.);

- Selling approximately 120,000 *counterfeit* COVID-19 vaccination record cards to persons who sought to evade government health and safety protocols by pretending

---

[4] The very term "counterfeit" means "made in imitation of something else *with intent to deceive*: Forged." https://www.merriam-webster.com/dictionary/counterfeit (last visited November 15, 2023) (emphasis added).

5

   to have received a COVID-19 vaccine without ever receiving one (*Id.* ¶¶ 1-2, 19.c., 20.j.);

- Making a badge with his name and photo to identify himself as a volunteer with a major COVID-19 testing company so that he could convince a local print shop owner (or, in other words, trick him into thinking) that Sciotto worked for a hospital and was authorized to print out thousands of copies of COVID-19 vaccination record cards (*Id.* ¶¶ 20.f.-20.h.);

- Actually tricking the print shop owner (or worker) into printing out thousands of copies of COVID-19 vaccination record cards for Sciotto (*Id.* ¶¶ 20.f-20.h.);

- Deceitfully, craftily, and dishonestly attempting to conceal his illegal behavior from law enforcement by changing every week the envelopes and shipping locations he used to mail the counterfeit vaccination record cards to buyers (*Id.* ¶ 20.k.); and

- Deceitfully, craftily, and dishonestly advising persons who bought *counterfeit* vaccination record cards from him to "handwrite in" lot numbers onto the counterfeit cards to make them look more authentic. (*Id.* ¶ 20.l.).

All these allegations of "deceit, craft, trickery, and dishonest means" were either incorporated into or directly alleged in Count 1 of the Indictment. (ECF 1 [Indictment] ¶¶ 16, 17-20).

## 2.4 The Indictment alleges that Sciotto committed several overt acts in furtherance of the alleged conspiracy.

In paragraphs 20.a.-20.l., the Indictment alleges that Sciotto committed at least 12 overt acts in furtherance of the conspiracy. (ECF 1 [Indictment] ¶¶ 20.a-20.l.). These include, among

6

other things, (1) explicitly offering on Facebook to sell counterfeit COVID-19 vaccination record cards to others, (2) posting pictures of stacks of counterfeit COVID-19 vaccination record cards available for purchase, (3) mailing shipments of counterfeit vaccination record cards to others, (4) making his fake badge to deceive the printshop owner or worker into printing out thousands of copies of counterfeit COVID-19 vaccination record cards for Sciotto, and (5) actually selling over 120,000 counterfeit COVID-19 vaccination record cards. (*Id.*). In the Indictment, there is no absence of alleged overt acts committed by Sciotto to further the alleged conspiracy.

  **2.5**  **The Indictment alleges that Sciotto and his co-conspirators acted with interdependence among themselves.**

  The Indictment also alleges that Sciotto and his co-defendant "did unlawfully, voluntarily, intentionally, and knowingly conspire, combine, confederate, and agree together and with each other and with other individuals . . . *with interdependence among the members of the conspiracy* . . . ." (ECF 1 [Indictment] ¶ 17) (emphasis added). Nothing more is required. And Sciotto does not challenge the sufficiency of this allegation.

  **2.6**  **Despite the clarity of the Indictment, Sciotto now asks the Court to dismiss the Indictment for purportedly failing to state an offense against him.**

  The Indictment alleges each of the elements of the offense with which Sciotto is charged. (*Supra* §§ 2-2.5). Notwithstanding, Sciotto has filed a motion to dismiss the Indictment claiming that it somehow fails to state an offense under Fed. R. Crim. P 12(b)(3)(B)(v).

/ / /

/ / /

3.  **LEGAL ARGUMENT**

    **3.1   In evaluating the sufficiency of the Indictment, the Court should not look beyond the allegations of the Indictment.**

Criminal defendants enjoy the constitutional right "to be informed of the nature and cause of the accusation" against them. U.S. CONST. AMEND. VI. Therefore, Federal Rule of Criminal Procedure 7 requires that an indictment provide this notice by stating the "essential facts constituting the offense charged." FED. R. CRIM. P. 7(c)(1). An indictment complies with this standard "if it sets forth the elements of the offense charged, puts the defendant on fair notice of the charges against which he must defend, and enables the defendant to assert a double jeopardy defense." *United States v. Dashney*, 117 F.3d 1197, 1205 (10th Cir. 1997) (citation omitted); *United States v. Todd*, 446 F.3d 1062, 1067 (10th Cir. 2006). [W]here the indictment quotes the language of a statute and includes the date, place, and nature of illegal activity, it need not go further and allege in detail the factual proof that will be relied upon to support the charges." *United States v. Powell*, 767 F.3d 1026, 1030 (10th Cir. 2014) (quoting *United States v. Redcorn*, 528 F.3d 727, 733 (10th Cir. 2008)). "An indictment need only meet minimal constitutional standards[;] ... [courts] determine the sufficiency of an indictment by practical rather than technical considerations." *Id.* at 1030 (quoting *Dashney,* 117 F.3d at 1205).

Challenging an indictment is not a means of testing the strength or weakness of the government's case, or the sufficiency of the government's evidence. *United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir.1994). Rather, "[a]n indictment should be tested solely on the basis of the allegations made on its face, and such allegations are to be taken as true." *Id.*

Therefore, in ruling on Sciotto's motion to dismiss the Indictment, the Court is bound by the factual allegations in the Indictment. *Hall*, 20 F.3d at 1088. The Court may only consider other facts when they are "undisputed and the government fails to object to the district court's consideration of those undisputed facts." *Id.* Here, the United States objects to any consideration of facts outside the allegations of the Indictment. Consequently, "[u]nder Tenth Circuit law, the Court is not free to determine, like on a motion for summary judgment under the Federal Rules of Civil Procedure, whether a genuine issue of material fact exists." *United States v. Tafoya*, 376 F. Supp. 2d 1257, 1260 (D.N.M. 2005) (citing and applying *Hall*, 20 F.3d at 1088).

**3.2    The Court should not dismiss the Indictment, because the allegations in the Indictment state all the elements of the charge of Conspiracy to Defraud the United States by obstructing a lawful government function of the CDC.**

As noted above, the Indictment lays out each of the elements required to state an offense of Conspiracy to Defraud the United States by obstructing a lawful government function of an agency of the United States—namely the CDC—in violation of 18 U.S.C. § 371. (*Supra* §§ 2-2.5). The parties agree that the elements of such an offense are (1) the defendant entered into an agreement, (2) to obstruct a lawful function of the federal Government (or one of its agencies), (3) by deceitful or dishonest means, (4) committed at least one overt act in furtherance of the conspiracy, and (5) acted with interdependence. (*Cf.* Def.'s Mot. to Dismiss the Indictment at 8; *supra* at 1 and n. 1). The Indictment alleges each element. (*Supra* §§ 2.-2.5).

Sciotto concedes that the first, fourth, and fifth elements are sufficiently alleged in the Indictment. But Sciotto mistakenly contends that the Indictment fails to allege the second and third

9

elements of the charged offense. More specifically, Sciotto claims that the indictment fails to allege (1) deceit, craft, trickery, or dishonesty (the third element) and (2) interference with the lawful function of a department of the United States government (the second element). Sciotto is, however, wrong on both counts.

### 3.2.1. The Indictment sufficiently alleges Sciotto acted with deceit, craft, trickery, and dishonest means.

Sciotto's contention that the Indictment fails to allege he acted with deceit, craft, trickery, or dishonest means fails as a matter of law. As noted above, the Indictment alleges, on its face, that Sciotto and his co-conspirators conspired "to defraud the United States by deceit, craft, trickery, and dishonest means . . . ." (ECF 1 [Indictment] ¶ 17). This is indisputable.

Moreover, the Indictment goes well beyond the minimal requirement to state this element of the charged offense. Indeed, the Indictment specifically alleges multiple instances of "deceit, craft, trickery, and dishonest means." (*Supra* § 2.3). Per the Indictment, Sciotto allegedly tricked a printer into printing out thousands of *counterfeit* COVID-19 vaccination record cards. (*Id.*). He allegedly manufactured and sold over 120,000 counterfeit COVID-19 vaccination record cards. (*Id.*). He allegedly acted to conceal his conduct from law enforcement by routinely changing his shipping addresses when mailing out the counterfeit cards. (*Id.*). He also allegedly advised purchasers how to fill in lot numbers on the counterfeit cards to make them look authentic. (*Id.*).

In and of themselves, the allegations of manufacturing and selling *counterfeit* COVID-19 vaccination record cards sufficiently allege "deceit, craft, trickery, and dishonest means" because they involve making something else—counterfeit COVID-19 vaccination record cards—with the

intent to deceive others into believing the cards were authentic and reliably identified persons' COVID-19 vaccination status. *See supra* n. 4 (defining "counterfeit"). With respect to the counterfeit vaccination record cards, the fact that Sciotto was only trying to deceive or facilitate the deception of third parties, as opposed, to the direct purchasers of his counterfeit cards is immaterial. The target of his deceit does not place him outside the scope of 18 U.S.C. § 371. *See United States v. Gurary*, 860 F.2d 521, 525 (2d Cir. 1988) (defendant convicted under 18 U.S.C. § 371 "defrauding" prong for creating phony invoices that he knew third parties would use to support deceptive tax returns). Furthermore, the additional allegations regarding how Sciotto tricked a printer into printing out thousands of counterfeit cards, sought to conceal his conduct from law enforcement, and advised purchasers how to make their counterfeit cards look more authentic only further establish Sciotto's alleged deceit, craft, trickery, and dishonest means.

Lastly, Sciotto's citations to other distinguishable cases fail to undermine this conclusion. Sciotto cites one case for the irrelevant proposition that "[M]ere open defiance of the governmental purpose to enforce a law by urging persons subject to it to disobey it"—*without deceit or trickery*—is not a conspiracy to defraud. (Def.'s Mot. to Dismiss Indictment at 6 (citing *Hammerschmidt v. United States*, 265 U.S. 182, 189 (1924)). Here, Sciotto engaged in deceit and trickery. Therefore, *Hammerschmidt* is inapposite. Moreover, *Hammerschmidt* is also distinguishable for another reason. *Hammerschmidt* denied a charge for conspiracy to obstruct the lawful government functions of the federal Government based on allegations that the defendant was using handbills and other literature to openly encourage others not to register with Selective Service. *Hammerschmidt*, 265 U.S. at 185. Unlike Sciotto, in *Hammerschmidt*, the defendant was not

11

creating counterfeit Selective Service registration cards (or any other government identification card, such as a driver license, passport, or COVID-19 vaccination record card) to undermine and obstruct the Selective Service system's ability to reliably track registration. The defendant was merely speaking out against registration. Here, on the other hand, Sciotto was not charged for speaking out against receiving COVID-19 vaccines. He was charged with deceitfully and dishonestly manufacturing and selling counterfeit COVID-19 vaccination record cards to others to undermine the CDC's lawful government functions of providing vaccinations and providing a reliable means to verify persons' COVID-19 vaccination status. *Hammerschmidt* is inapposite.

Sciotto's citations to *United States v. Porter*, 591 F.2d 1048 (5th Cir. 1979) and to *United States v. Cogswell*, 637 F.Supp. 295, 299 (N.D. Cal. 1985) are also inapposite. *Porter* rejected a charge under 18 U.S.C. § 371 based on a lack of notice that the alleged actions were criminal. *Porter*, 591. F.2d at 1057-58 (noting "no statute or regulation placed these doctors on notice that they could receive payment for their work in drawing and handling blood samples only by directly billing the patient, billing the Medicare carrier or billing a third party insurer"). Such a lack of notice is not at issue here. *Cogswell*, on the other hand, rejected a charge under 18 U.S.C. § 371 because the indictment did "not allege the particulars of a fraudulent scheme." 637 F.Supp. at 300. Here, however, the United States has alleged the particulars of Sciotto's fraudulent scheme. (*Supra* § 2-2.5). Thus, like *Hammerschmidt*, neither *Porter* nor *Cogswell* supports Sciotto's argument that the Indictment somehow fails to state an offense.

/ / /

/ / /

### 3.2.2 The Indictment sufficiently alleges that Sciotto conspired to obstruct a lawful government function of the CDC.

Contrary to Sciotto's second main contention, the Indictment also sufficiently alleges that Sciotto conspired to obstruct a lawful government function of the CDC. Section 18 U.S.C. § 371 not only includes the cheating of the government out of property or money, but "also means to interfere with or obstruct one of its lawful governmental functions by deceit, craft or trickery, or at least by means that are dishonest." *United States v. Coplan*, 703 F.3d 46, 60–61 (2d Cir. 2012).

As alleged in the Indictment, Sciotto was minting counterfeit COVID-19 vaccination record cards, with the emblem of the CDC on them, and with copied vaccine lot numbers, so that he and others could fraudulently pass for being vaccinated. (*Supra* § 2.2). Sciotto's counterfeit cards mimicked the cards that the CDC allowed to be distributed exclusively to persons who had actually been vaccinated for COVID-19. Sciotto's sale of counterfeit COVID-19 vaccination record cards thus undermined the CDC's lawful government functions of responding to the COVID-19 pandemic by reliably providing COVID-19 vaccines to persons and by providing for the reliable verification of persons' COVID-19 vaccination status through properly administered COVID-19 vaccination record cards that were to be distributed exclusively through authorized distributors who actually administered the vaccines listed on the identifying cards.

As alleged in the Indictment, what Sciotto did went far beyond encouraging others to disobey the law or to refuse vaccination. Sciotto's actions were akin to creating fake draft registration certificates, fake Real ID cards, or fake passports. His actions undermined, impeded, impaired, obstructed, and, to some extent, defeated the CDC's system of providing for the reliable

13

verification of persons' vaccination status. His actions also undermined, impeded, impaired, obstructed, and, to some extent, defeated the CDC's lawful government function of working to contain and minimize the spread of COVID-19 during a world-wide pandemic. This was a crime.

### 3.3 Even if the Court were to consider, over the United States' objection, facts outside the Indictment regarding the timing and nature of federal vaccine mandates, the Indictment would still be sufficient as a matter of law.

Sciotto improperly urges the Court to consider facts outside the Indictment regarding the asserted lack of a federal vaccine mandate during most of the time Sciotto was conspiring to defraud the United States by obstructing the CDC's lawful government functions in responding to the COVID-19 pandemic. (*See* Def.'s Mot. to Dismiss Indictment at 5, 10-11).

First, the Court should not consider the timing and scope of any federal vaccine mandate because this factual issue falls outside the allegations of the Indictment. As Sciotto acknowledges, in "rare exceptions," the Court can consider allegations outside the four corners of the Indictment where (1) the operative facts are undisputed, (2) the government fails to object to the district court's consideration of those facts, and (3) the district court can determine from them as a matter of law, that the government is incapable of proving its case beyond a reasonable doubt. (Def.'s Mot. to Dismiss Indictment at 5) (citing *United States v. Pope*, 613 F.3d 1255, 1260 (10th Cir. 2010)). But here, the United States objects to Court's consideration of any such facts. Therefore, for this reason alone, the Court should not entertain the timing and scope of a federal vaccination mandate.

Furthermore, even if the Court were to consider the timing and scope of a federal vaccination mandate, doing so would not support a legal finding that the government is incapable

of proving its case beyond a reasonable doubt. Sciotto contends that the United States cannot prove its case because there was no universal federal vaccination mandate in place while Sciotto was manufacturing and selling counterfeit COVID-19 vaccination record cards. (Def.'s Mot. to Dismiss Indictment at 10-11). First of all, in making this argument, Sciotto improperly conflates the CDC's lawful government functions in responding to the COVID-19 pandemic which are actually at issue in the Indictment with the imposition of a federal vaccination mandate. However, the Indictment does not mention a federal vaccination mandate, much less depend on one. Rather, irrespective of the timing and scope of any federal vaccination mandate, the Indictment makes clear that Sciotto's alleged conduct otherwise obstructed the CDC's lawful government functions in responding to the COVID-19 pandemic. The timing and scope of the federal vaccination mandate focused on by Sciotto are thus false targets. The Indictment is not based on a mandate.

Secondly, even if—over the Government's objection—the Court were to consider the timing and scope of the federal vaccination mandate raised in Sciotto's opposition, Sciotto's argument would still fail. Sciotto contends that the first federal COVID-19 vaccination mandate was issued on September 9, 2021. (Def.'s Mot. to Dismiss Indictment at 3). This mandate required COVID-19 vaccination for all federal employees and contractors, employers with more than one hundred employees, and health care employees whose employers received Medicare or Medicaid reimbursements. (*Id.*). This mandate set deadlines of November 22, 2021 and January 4, 2022 for certain employees to be vaccinated. (*Id.* at 3-4). Sciotto contends that because there was never a universal vaccine mandate across the country before Sciotto stopped selling counterfeit cards, he somehow, never obstructed *any lawful government function of the CDC*.

This narrower, temporal argument also misses the mark, however. For one, the Indictment alleges that Sciotto was still selling counterfeit COVID-19 vaccination record cards through *at least September 25, 2021*—after President Biden imposed the federal vaccination mandate. (ECF 1 [Indictment] ¶ 17). Therefore, even if the Court were to accept Sciotto's incorrect framing of the lawful government functions at issue as relating only to a mandate, the argument would still fail. By continuing to sell counterfeit vaccination record cards after the federal vaccination mandate was announced, Sciotto was also obstructing any lawful government function of the mandate while the compliance deadlines were pending. Furthermore, even after the deadlines were imposed, the purchasers of Sciotto's counterfeit COVID-19 vaccination record cards could still continue to use those cards to undermine any vaccination mandate indefinitely. Therefore, the timing of the federal vaccination mandate did not prevent Sciotto from interfering with any lawful government functions involving the vaccination mandate—much less the government functions of the CDC which are actually at issue in the Indictment, and which support the charge against Sciotto.

**4.     CONCLUSION**

This is not a close case. The Indictment alleges each of the elements of the charge of Conspiracy to Defraud the United States by obstructing the CDC's lawful government functions. The Indictment also specifically alleges that Sciotto engaged in deceit, craft, trickery, and dishonest means to obstruct the CDC's lawful government functions of responding to the COVID-19 pandemic by administering COVID-19 vaccines and distributing accompanying COVID-19 vaccination record cards to reliably reflect the recipients' vaccination status. The timing and scope

of any federal vaccination mandates is irrelevant. The Court should confine its analysis to the allegations of the Indictment, deny the motion to dismiss, and allow this case to go to trial.

DATED this 16th day of November, 2023.

TRINA A. HIGGINS
United States Attorney

*/s/ Todd C. Bouton*
TODD C. BOUTON
Assistant United States Attorney