IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> NICHOLAS FRANK SCIOTTO, <br><br> Defendant. | **ORDER AND MEMORANDUM DECISION DENYING MOTION TO SUPPRESS, DENYING MOTION TO DISMISS, DENYING MOTION FOR A BILL OF PARTICULARS, AND ORDERING ADDITIONAL BRIEFING ON MOTION TO DETERMINE <u>JAMES</u> ISSUES** <br><br> Case No. 1:23-cr-00023-TC <br><br> Judge Tena Campbell |

Defendant Nicholas Sciotto is charged in a one-count Indictment with Conspiracy to Defraud the United States in violation of 18 U.S.C. § 371. (Indictment, ECF No. 1.) Mr. Sciotto has moved to suppress two search warrants (ECF No. 59), to dismiss the indictment against him (ECF No. 63), and for a bill of particulars (ECF No. 66). For the following reasons, the court denies these motions. Mr. Sciotto has also filed a motion to determine <u>James</u> issues (ECF No. 65). The court denies this motion in part, but grants Mr. Sciotto leave to submit a written response to the evidentiary proffer filed by the United States.

## BACKGROUND

The United States sought and obtained two search warrants that allowed it to seize various data from Mr. Sciotto's Facebook account.

1

In the affidavit supporting the first search warrant, a special agent with the Department of Health and Human Services Office of Inspector General (HHS-OIG) alleged that she began investigating Mr. Sciotto after the FBI received a complaint from an acquaintance of Mr. Sciotto's that Mr. Sciotto was attempting to sell blank COVID-19 vaccination record cards on Facebook. (Aff. First Search Warrant, ECF No. 60-1 at Attach. A, ¶ 20.) On or about August 31, 2021, the FBI interviewed the informant over the phone and received screenshots showing stacks of what appeared to be vaccination cards with messages such as: "How many do you need? DM me" and "Do you want to be a lab rat? If not message me." (Id. ¶21.) On or about the same day, the FBI interviewed a second person who stated that Mr. Sciotto had posted an offer to sell COVID-19 vaccination record cards on Facebook. (Id. ¶ 22.)

United States Magistrate Judge Dustin B. Pead reviewed the special agent's affidavit on November 17, 2021. The affidavit indicated that the United States was seeking to obtain from Mr. Sciotto's Facebook account "evidence, contraband, fruits, and instrumentalities relating to potential violations of 18 U.S.C. § 1343 (Wire Fraud), 18 U.S.C. § 641 (Conversion of Government Property), and 18 U.S.C. § 1017 (Misuse of a Government Seal)." (Id. ¶ 2.) The affidavit stated: "These crimes involve the purported theft, conversion, and sale of actual or counterfeit COVID-19 Vaccination Record Cards." (Id.) The government points out that, at the time, it did not know whether Mr. Sciotto was selling actual or counterfeit COVID-19 vaccination record cards. (Gov't's Opp'n, ECF No. 61 at 4.)

Magistrate Judge Pead determined that the affidavit established probable cause to issue the warrant. (See First Search Warrant, Attach. A-1 to Gov't's Opp'n, ECF No. 61.) The warrant required Facebook to disclose certain information to the United States "for the time period ranging from December 11, 2020 (when the FDA issued the first Emergency Use

2

Authorization (EUA) for use of the Pfizer-BioNTech COVID-19 Vaccine in people aged 16 years and older) to the present[.]" (Id., Attach. B to First Search Warrant.)  This information included all contact information for Mr. Sciotto; all photoprints, including metadata on uploaded photos; all Neoprints, including friend lists, links, posts, comments, and groups and networks of which Mr. Sciotto was a member; all video uploads, including metadata; all communications and messages made or received by Mr. Sciotto; all IP logs; all information about Mr. Sciotto's use of Facebook Marketplace; credit cards and bank accounts associated with any payments; all privacy settings; and all records of communications between Facebook and any person associated with Mr. Sciotto's account.  (See id.)  From this disclosed information, the warrant allowed the government to seize anything that constituted "evidence and/or instrumentalities of potential criminal offenses, including, but not limited to 18 U.S.C. § 1343 (Wire Fraud), 18 U.S.C. § 641 (Conversion of Government Property), or 18 U.S.C. § 1017 (Misuse of a Government Seal). (Id.)

     Facebook disclosed the required information, and the special agent began reviewing it on or about January 10, 2022.  (Aff. Second Search Warrant, ECF No. 60-1 at Attach. B, ¶ 27.)  The special agent discovered photos that suggested that Mr. Sciotto was not "selling stolen cards but [was] instead involved in the printing and sale of large quantities of counterfeit COVID-19 Vaccination Record Cards[.]"  (Id.)  Concluding that the manufacture and sale of counterfeit—not stolen—COVID-19 vaccination record cards was better addressed by charges under 18 U.S.C. § 371 for Conspiracy to Obstruct a Government Program, the special agent prepared a second affidavit asking to search the information Facebook had already provided for evidence of a violation of 18 U.S.C. § 371.  (Id. ¶¶ 1–2, 9–10, 27.)

3

United States Magistrate Judge Daphne A. Oberg reviewed the second affidavit on February 22, 2022, and determined that there was probable cause to issue a second search warrant. (See Second Search Warrant, Attach. B-1 to Gov't's Opp'n, ECF No. 61.) The warrant limited the timeframe of the search to "the time period ranging from December 11, 2020 (when the FDA issued the first Emergency Use Authorization (EUA) for use of the Pfizer-BioNTech COVID-19 Vaccine in people aged 16 years and older) to the time the First Search Warrant was executed[.]" (Id., Attach. B to Second Search Warrant.) The warrant referred to the information already disclosed by Facebook and allowed the government to seize "[a]ll information … that constitutes evidence and/or instrumentalities of potential criminal offenses, including, but not limited to 18 U.S.C. § 371 (Conspiracy to Obstruct a Government Program)." (Id.)

The government alleges that, based on the seizures authorized by the search warrants, the government uncovered extensive evidence that Mr. Sciotto illegally manufactured and sold counterfeit COVID-19 vaccination record cards, including a Facebook message in which Mr. Sciotto stated that he had sold over 120,000 cards. (ECF No. 61 at 10–11.) Along with a co-conspirator, Mr. Sciotto was indicted on March 29, 2023. (ECF No. 1.) The government charged him with one count of a violation of 18 U.S.C. § 371 for obstructing the COVID-19 vaccination program of the Centers for Disease Control and Prevention (CDC). (Id. ¶ 1.)

## ANALYSIS

### A. Motion to Suppress

Mr. Sciotto moves to suppress the evidence obtained from the two search warrants on the ground that the warrants were general and overly broad, thereby violating the Fourth Amendment's prohibition of "unreasonable searches and seizures" and its requirement that a warrant "particularly describ[e] the … things to be seized." U.S. Const. amend. IV.

4

General warrants allow government officials to engage in "exploratory rummaging in a person's belongings." United States v. Sells, 463 F.3d 1148, 1154 (10th Cir. 2006) (quoting Coolidge v. New Hampshire, 403 U.S. 443, 467 (1971)).  For a court to rule that such a warrant is unconstitutional, the warrant must "vest the executing officers with unbridled discretion to conduct an exploratory rummaging through [the defendant's property] in search of criminal evidence." United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars and Fifty-Seven Cents, 307 F.3d 137, 149 (3d Cir. 2002) (citation omitted).  In contrast, a warrant that is overly broad is one that "describes in both specific and inclusive generic terms what is to be seized, but … authorizes the seizure of items as to which there is no probable cause." Id. (cleaned up).

Mr. Sciotto argues that his case is analogous to United States v. Irving, in which the United States District Court for the District of Kansas found that a warrant was fatally overbroad where the warrant "allowed the officer to search virtually every aspect of Defendant's Facebook account." 347 F. Supp. 3d 615, 624 (D. Kan. 2018).  The information the warrant authorized the officer to search included: 1) all contact information; 2) all activity logs; 3) all photoprints; 4) all Neoprints, including status updates; 5) all communications and messages; 6) all IP logs; and 7) all past and present lists of friends. Id.  The court found that the warrant "encompassed everything in Defendant's Facebook account and there were no set limits."

The court is not persuaded by Mr. Sciotto's assertion that his case is analogous because there are two ways in which the search warrants at issue here are distinguishable from the warrant in Irving.  First, both warrants here were limited to a time period of about one year, from December 11, 2020, to November 17, 2021.  As a result, neither warrant allowed the government to search everything in Mr. Sciotto's Facebook account from its inception.

5

More importantly, the warrants here authorized the search of information that was directly related to the crime alleged. In Irving, the warrant stated that the crime under investigation was "a violation of the Kansas Offender Registry Act[, which] requires a convicted sex offender to register any and all email addresses and online identities used on the internet." Irving, 347 F. Supp. 3d at 623. In other words, the crime was "simply that Defendant, as a registered sex offender, failed to register that he had [a] Facebook account." Id. at 624. The court held that "[t]he scope of the warrant should have been defined and limited by that crime." Id. Instead of limiting the scope of the warrant to user attribution information, the warrant authorized a search of the defendant's entire Facebook account—which allowed the investigating officer to discover evidence of a different crime (child pornography). Id.

In contrast, the warrants at issue here, while allowing the government to search a broad array of data from Mr. Sciotto's account, were nevertheless defined and limited by the criminal activity alleged—namely, "the purported theft, conversion, and sale of actual or counterfeit COVID-19 Vaccination Record Cards." (ECF No. 60-1 at Attach. A, ¶ 2.) Indeed, Mr. Sciotto's Facebook account was the medium through which he was committing the alleged crime, as screenshots suggested that Mr. Sciotto was advertising the sale of real or counterfeit vaccination cards on Facebook. Evidence of this criminal activity could potentially be found in much of the data in Mr. Sciotto's account during the relevant timeframe, including Mr. Sciotto's photographs, Facebook contacts, wall posts, metadata, financial information, and communications. Although Mr. Sciotto argues that the warrants allowed the government to search irrelevant information—such as the sale of a couch or a status update about a birthday dinner—, he does not explain how the warrant could have been narrowed to exclude this information without also excluding relevant information, such as the sale of vaccination cards or a status update about such a sale.

6

Additionally, from the information Facebook was required to disclose, the government was only authorized to seize evidence related to potential criminal offenses. The first search warrant referenced violations of 18 U.S.C. § 1343 (Wire Fraud), 18 U.S.C. § 641 (Conversion of Government Property), and 18 U.S.C. § 1017 (Misuse of a Government Seal). The second warrant, issued after the investigating agent determined that the cards were counterfeit rather than stolen, referenced violations of 18 U.S.C. § 371 (Conspiracy to Obstruct a Government Program). The court therefore finds that neither warrant was overbroad. Both were limited in time and by reference to the specific crime alleged, and both authorized the disclosure and seizure of information directly related to that crime and for which there was probable cause to seize.

The court is similarly unpersuaded by Mr. Sciotto's argument that the first search warrant was a general warrant that permitted "exploratory rummaging" in Mr. Sciotto's Facebook history and through which the government uncovered evidence of the additional crime of conspiracy. See Sells, 463 F.3d at 1154. The statutory violations referenced in both the first and second warrants were directly related to the criminal activity under investigation: the sale of actual or counterfeit COVID-19 vaccination cards. Once the investigating agent determined that these cards were counterfeit and not stolen, it was reasonable for the government to modify its legal theory to fit the evidence. The first search warrant did not authorize the government to search for evidence of unrelated crimes, and it did not lead to the discovery of an unrelated conspiracy crime. The second search warrant merely referenced a different statutory basis for the same criminal activity that was already under investigation.

Because the court finds that both search warrants were proper, it need not consider the parties' arguments about the good faith exception or the fruit of a poisonous tree doctrine.

B. **Motion to Dismiss**

The government charges Mr. Sciotto with one count of Conspiracy to Obstruct a Government Program in violation of 18 U.S.C. § 371. This statute makes it unlawful to "conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and [for] one or more of such persons [to] do any act to effect the object of the conspiracy …." 18 U.S.C. § 371. The Supreme Court has read the clause prohibiting persons from defrauding the United States broadly, stating that "[t]o conspire to defraud the United States means primarily to cheat the government out of property or money, but it also means to interfere with or obstruct one of its lawful governmental functions by deceit, craft or trickery, or at least by means that are dishonest." Hammerschmidt v. United States, 265 U.S. 182, 188 (1924). The parties agree that the elements of this type of conspiracy are: 1) that defendant entered into an agreement 2) to obstruct a lawful function of the federal government 3) by deceitful or dishonest means and 4) committed at least one overt act in furtherance of the conspiracy with 5) interdependence among the conspirators. United States v. Coplan, 703 F.3d 46, 61 (2d Cir. 2012) (citation omitted); United States v. Cooper, 654 F.3d 1104, 1115 (10th Cir. 2011).

Mr. Sciotto moves to dismiss the indictment for two reasons. First, he argues that he did not obstruct a lawful function of the government because the federal vaccination rollout was not accompanied by a mandatory federal vaccination campaign. Mr. Sciotto therefore maintains that he did not prevent someone who wanted a vaccine from receiving one or otherwise impede the federal government in administering the vaccines.

The court finds that Mr. Sciotto misconstrues the purpose of the vaccination cards. The lawful function of the CDC that Mr. Sciotto obstructed was not a vaccination requirement but the

8

rollout of a reliable system by which governmental entities, businesses, or even private individuals could verify whether someone had been vaccinated.  It is irrelevant whether the federal government required individuals to get a vaccination—although the court notes that a federal mandate requiring certain federal employees and contractors to be vaccinated did issue during the timeframe covered by the indictment[1]—because the purpose of the CDC program extended beyond any specific vaccination requirement.  By selling counterfeit COVID-19 vaccination cards, Mr. Sciotto undermined the CDC's ability to provide a reliable determination—for use by the federal government, states, municipalities, businesses, or individuals—of who had and who had not received a vaccination.

      Second, Mr. Sciotto argues—rather boldly—that his actions committed no trickery or deceit because he was openly selling the counterfeit cards over his public social media account.  But the fact that his customers knew they were buying counterfeit cards does not change the fact that the cards were counterfeit.  These cards included the emblem of the CDC and fraudulent vaccine lot numbers.  (See ECF No. 1 at ¶ 19.b (asserting that the counterfeit cards looked identical to bona fide COVID-19 vaccination cards).)  The indictment also alleges that Mr. Sciotto tricked a printer into printing thousands of fake cards (id. at ¶ 20.g) and that he concealed his conduct from law enforcement by routinely changing his shipping address when he mailed the counterfeit cards (id. at ¶ 20.k).  Nevertheless, Mr. Sciotto argues that any deceit or trickery were not the means by which he interfered with a federal government function, see Hammerschmidt, 265 U.S. at 188 (requiring that the obstruction of the federal governmental

---

[1] The first federal COVID-19 vaccination was issued on September 9, 2021 (see Def.'s Mot. to Dismiss Indictment, ECF No. 63 at 3 (citing Exec. Order No. 14043, 86 Fed. Reg. 50989, 2021 WL 4148113 (Sept. 9, 2021))), and the indictment alleged that Mr. Sciotto was selling counterfeit COVID-19 vaccination cards through at least September 25, 2021.  (ECF No. 1 at ¶ 17.)

function be "by deceit, craft or trickery, or at least by means that are dishonest"). But Mr. Sciotto's argument again misconstrues the federal governmental function too narrowly. The Indictment's allegations of deceit (i.e., the manufacture and sale of counterfeit cards) were indeed the means by which Mr. Sciotto allegedly impeded the CDC's rollout of a reliable system to determine who had received a vaccination.

For these reasons, the court finds that the Indictment adequately alleges the elements of a Conspiracy to Obstruct a Government Program. The court therefore denies Mr. Sciotto's motion.

### C. Motion for Bill of Particulars

Mr. Sciotto also moves the court to order the government to provide him with a bill of particulars detailing how his actions obstructed or impeded a federal government function. Rule 7(f) of the Federal Rules of Criminal Procedure allows the court to direct the filing of a bill of particulars upon motion by the defendant. The purpose is to provide a defendant with information about the details of the charges necessary to the preparation of the defense, to avoid prejudicial surprise at trial, and to protect against a second prosecution based on the same set of facts. Wong Tai v. United States, 273 U.S. 77, 82 (1927); King v. United States, 402 F.2d 289, 292 (10th Cir. 1968). It is within the discretion of the trial court to grant or refuse a request for a bill of particulars. United States v. Hedges, 458 F.2d 188, 191 (10th Cir. 1972).

The court declines to order a bill of particulars here. Mr. Sciotto's arguments are essentially a restatement of his arguments in his motion to dismiss and, for the reasons stated above, the court finds that the Indictment adequately and clearly alleges the elements of a Conspiracy to Obstruct a Government Program. The government charges Mr. Sciotto with the manufacture and sale of thousands of counterfeit COVID-19 vaccination cards. The Indictment

further alleges and describes at least 12 overt acts that Mr. Sciotto took in furtherance of this conspiracy. (ECF No. 1 at ¶¶ 20.a–20.l.) As a result, there is no need for a bill of particulars to adequately inform Mr. Sciotto of the charges against him.

### D. Motion to Determine James Issues

Finally, Mr. Sciotto moves the court to schedule a hearing under United States v. James, 590 F.2d 575, 578 (5th Cir. 1979), to determine the admissibility of any statements of alleged co-conspirators that the government intends to introduce at trial under Federal Rule of Evidence 801(d)(2)(E). The Tenth Circuit has stated that it is "strongly preferred" to make this admissibility determination before trial. United States v. Owens, 70 F.3d 1118, 1123 (10th Cir. 1995). But the court agrees with the United States that such a determination does not require an evidentiary hearing. The court may instead act on the basis of a pretrial evidentiary proffer. United States v. Hoover, 246 F.3d 1054, 1060 (7th Cir. 2001).

The government has made such a proffer (Gov't's Resp. to Mot. to Determine James Issues, ECF No. 70) and argues that the court may proceed on this basis because 1) the Indictment alleges the overt acts by which the coconspirators carried out the conspiracy; and 2) the coconspirator statements at issue can all be identified verbatim through the messages exchanged between Mr. Sciotto and the coconspirators over Facebook. The court agrees and finds that such an evidentiary proffer is a sufficient basis to determine admissibility in this case.

Mr. Sciotto has not yet responded to the government's evidentiary proffer. The court will therefore grant Mr. Sciotto an additional 30 days to submit a response, after which the court will issue a written ruling.

### ORDER

For the reasons stated above, the court ORDERS as follows:

1.  The Defendant's Motion to Suppress (ECF No. 59) is DENIED.

2.  The Defendant's Motion to Dismiss (ECF No. 63) is DENIED.

3.  The Defendant's Motion for a Bill of Particulars (ECF No. 66) is DENIED.

4.  The court directs the Clerk of Court to terminate the government's Motion to Seal (ECF No. 71), as the relevant exhibit has already been sealed (see ECF No. 70).

5.  The Defendant's Motion to Determine James Issues (ECF No. 65) is DENIED IN PART to the extent the motion asks the court to schedule a hearing. But the court directs the Clerk of Court to leave the motion pending and grants the Defendant 30 days from the date of this order to file a response to the evidentiary proffer offered by the United States. The court will then issue a written opinion on the admissibility of the relevant coconspirator statements.

DATED this 9th day of February, 2024.

BY THE COURT:

_____
Tena Campbell
United States District Judge